IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JENNIFER LEACH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-0644-CV-W-DW |
| ) | |
| PRUDENTIAL SIGNATURE ) | |
| REAL ESTATE, ) | |
| ) | |
| Defendant. ) | |

# ORDER

Plaintiff Jennifer Leach sues under Title VII, alleging that Defendant Prudential Signature Real Estate discriminated against her based on her sex and pregnancy. Before the Court is Prudential Signature's motion for summary judgment (Doc. 42). The motion is granted.

**I.     Summary Judgment Standard**

"Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 850 (8th Cir. 2005); Fed. R. Civ. P. 56(c). "The burden of demonstrating that there are no genuine issues of material fact rests on the moving party." Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 468 (8th Cir. 2004). However, the non-moving party must present evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in her favor. Rodgers, 417 F.3d at 850. The facts and inferences from those facts are viewed in the light most favorable to the nonmoving party. See Horn v. Univ. of Minn., 362 F.3d 1042, 1045 (8th Cir. 2004). "While summary judgment should seldom be utilized in employment discrimination cases, there is no 'discrimination case exception' to the application

of Fed. R. Civ. P. 56, and it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." Rodgers, 417 F.3d at 850 (citations and internal quotations omitted).

## II.     Factual Background

Leach was employed by Prudential Signature, a property management corporation. She began working at Prudential Signature's Whispering Hills apartment complex in October 2000. First she was a leasing consultant, then was promoted to leasing manager, then promoted again to assistant property manager. While Leach worked at Whispering Hills, she also lived in one of the apartments there.

In the fall of 2002, Leach requested that maintenance fix a problem at her apartment. Two male maintenance employees, including Scott Loux, later told Leach that they entered her apartment, and ran around her apartment with her panties on their heads. The same men, during a conversation with Leach and other employees about the company Christmas party, began talking about the motel room they were going to rent for the night, and how in previous years they had engaged in swinging activities and watched each other having sex underneath the doors. Later, Loux told Leach that the way she ate a hot dog resembled oral sex. The other male employee laughed at the remark.

In April 2003, Leach found out that she was pregnant and informed supervisors of the pregnancy. Beginning in May 2003, a supervisor named Laura Pyles made comments about Leach's pregnancy, particularly that Leach's "cleavage" was growing. In June 2003, Leach advised Pyles that her uniform shirts were too small, and requested permission to start wearing maternity clothing. That initial request was denied, and Leach was given men's polo shirts (she

2

later wore maternity clothes). Pyles told Leach, "This is what happens when you get pregnant, you get fat." Pyles also referred to Leach's protruding belly button, and said that Leach should cover up her belly button with a band-aid to keep it from sticking out. In August 2003, during a meeting with Leach and others, Pyles said "we never had to worry about this with you before" in reference to the fact that Leach's breasts were getting bigger during pregnancy. Also in August, at a restaurant, Pyles commented in front of the entire the Whispering Hills staff that Leach, due to her growing cleavage, could walk around the restaurant's tables or go outside and get new leases for the property.

Leach quit her job in September 2003. She filed this suit, alleging disparate treatment based on pregnancy, disparate impact on pregnant women, a hostile work environment, retaliation, constructive discharge, and intentional infliction of emotional distress.

**III. Discussion**

    **A. Prima facie case of pregnancy discrimination**

Leach alleges pregnancy discrimination under both disparate treatment and disparate impact[1] theories. Prudential Signature's main argument is that Leach cannot prove an adverse employment action, as required to meet her burden of production to make a prima facie case. The Court agrees: Leach alleges only unfairness, not a material employment disadvantage.

To establish a prima facie case of discrimination, a plaintiff must present evidence of, among other things, an adverse employment action. See Gilooly v. Mo. Dept. of Health and Senior Servs., 421 F.3d 734, 738-39 (8th Cir. 2005) (disparate treatment); Evers v. Alliant

---

[1]Leach presents no statistical evidence whatever of a disproportionately adverse impact of Prudential Signature's work hours and dress codes on pregnant women. See Lang v. Star Herald, 107 F.3d 1308, 1314 (8th Cir.), cert. denied, 522 U.S. 839 (1997).

Techsystems, Inc., 241 F.3d 948, 953 (8th Cir. 2001) (disparate impact). "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's career prospects meet this standard." Cooney v. Union Pac. R.R. Co., 258 F.3d 731, 734 (8th Cir. 2001) (citations and internal quotations omitted); see also Burchett v. Target Corp., 340 F.3d 510, 518 (8th Cir. 2003). "Certain employment actions cannot be characterized as adverse. Such actions include changes in terms, duties, or working conditions that cause no materially significant disadvantage to the employee; an employer's demand, which was later withdrawn with no impact on employee's continued employment, that an employee take a drug test; or disappointment with changes in one's employment situation." Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 684 (8th Cir. 2001).

In response to Prudential Signature's motion for summary judgment, Leach submits a new affidavit listing numerous allegedly discriminatory employment actions. In the new affidavit, Leach complains that during the summer of 2003, she lost responsibilities for payroll, bill processing, issuing notices to vacate, and computer entry; that she lost part of her compensation when her discounted rent was taken away, while other employees continued to receive rent discounts; that a certain monthly commission was discontinued, amounting to a reduction in pay; and other new allegations of discriminatory treatment.

None of the statements in the affidavit were listed in the March 2005 "Plaintiff's Designation of Incidents of Discrimination" (Doc. 14). That document was required by this Court's scheduling order, directing Leach to file "a designation of each incident or happening

4

which may be offered at trial to show either the discriminatory treatment for which the claim is made, or the discriminatory animus." Nor were any of the new allegations identified as discriminatory during Leach's July 2005 deposition, when she was clearly and repeatedly asked: "Are there any other instances of discrimination that we haven't discussed?"; "How else were you discriminated on the basis of your sex?"; "How else were you discriminated on the basis of your pregnancy?"; "Any other discrimination on the basis of pregnancy?"; and "Now, other than what we've already discussed today and then the other incidents that you say you have recorded but don't recall the specifics of, is there anything else regarding your allegations of discrimination that we haven't covered?" To the extent Leach's affidavit asserts new incidents of discriminatory treatment, those incidents are not admissible at trial. The same is true for new affidavits from Kathi Doherty, John Leach, and Carol Lorenz. Leach's new allegations, not designated during discovery, cannot be used here to defeat summary judgment. Cf. Piantanida v. Wyman Ctr., Inc., 927 F. Supp. 1226, 1244-45 (E.D. Mo. 1996), aff'd, 116 F.3d 340 (8th Cir. 1997); Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008-09 (8th Cir. 1998).

With the admissible facts, Leach cannot prove to a reasonable jury that she was the subject of any adverse employment action. Leach testified that she was never fired, never received a reduction in salary, and never received a demotion in position. Instead, Leach relies mainly on the fact that supervisors reprimanded her three times—twice in writing and once orally—in the summer of 2003. "[N]egative performance review is not in itself an adverse employment action, however, and it is actionable only if the employer subsequently uses that review to alter the terms or conditions of employment to the detriment of the employee." Burchett, 340 F.3d at 518 ; see also Baucom v. Holiday Cos., 428 F.3d 764, 768 (8th Cir. 2005);

5

Grube v. Lau Indus., Inc., 257 F.3d 723, 729 (7th Cir. 2001) ("unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions."). There is no evidence that the three "corrective action notices" here even lead to a negative performance review. Without more, these disciplinary actions do not amount to an adverse employment action. See Burchett, 340 F.3d at 518.

Beyond the reprimands, Leach was required to work additional hours, including at open houses for prospective residents, during the summer 2003 leasing season. But the uncontroverted evidence is that all similarly-situated employees were required to work open houses and some of the additional hours. Increased hours certainly did not significantly affect Leach's future career prospects. See Cooney, 258 F.3d at 734. The Court concludes that seasonal hours, worked by everyone, cannot be a material disadvantage. See, e.g., Sowell, 251 F.3d at 684 (no adverse employment action where ten-hour day requirement applied to all tool-room employees).

Further, Leach's supervisor initially refused Leach's request to carry over her vacation hours for maternity leave to begin in December 2003. However, it is undisputed that Leach's request was granted. Leach got exactly what she asked for. Mere hesitance in granting a request cannot be a material employment disadvantage. Cf. Sowell, 251 F.3d at 684; Thomas v. St. Luke's Health Sys., Inc., 869 F. Supp. 1413, 1435 (N.D. Iowa 1994), aff'd, 61 F.3d 908 (8th Cir. 1995).

Finally—as discussed at Parts III.C and III.D—Leach was not subjected to a work environment rising to the level of a constructive discharge. After careful review of the facts, the Court can only conclude that Leach suffered no adverse employment action. Therefore, her

6

prima facie case of discrimination fails, and summary judgment must be granted.

### B. Prima facie case of retaliation

"To establish a prima facie case of Title VII retaliation, the plaintiff must show: (1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection existed between her protected activity and the adverse employment action." Sowell, 251 F.3d at 684.

The Court assumes, without deciding, that there is a material issue of fact as to whether Leach engaged in protected activity. For the same reasons discussed as to her pregnancy discrimination claims, Leach cannot prove any adverse employment action following any protected activity. See Davis v. KARK-TV, Inc., 421 F.3d 699, 706-07 (8th Cir. 2005). Therefore, summary judgment must be granted on the retaliation claim.

### C. Hostile work environment

To succeed on a claim of hostile work environment sexual harassment, Leach must prove "that she was a member of a protected group, that she was subjected to unwelcome sexual harassment, that the harassment was based on sex, and that the harassment affected a term, condition, or privilege of her employment." Duncan v. Gen. Motors Corp., 300 F.3d 928, 933 (8th Cir. 2002), cert. denied, 538 U.S. 994 (2003); see also Alagna v. Smithville R-II, 324 F.3d 975, 979 (8th Cir. 2003) (ineffective remedial action as fifth element of prima facie case). The Court agrees with Leach that there is a jury question as to whether she was subjected to unwelcome sexual harassment based on sex. The question on summary judgment is whether a reasonable jury could find that sexual harassment affected a term, condition, or privilege of

Leach's employment.

"[N]ot all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). "To clear the high threshold of actionable harm," Leach must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult." Duncan, 300 F.3d at 934. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998). "Thus, the fourth part of a hostile environment claim includes both objective and subjective components: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive." Duncan, 300 F.3d at 934. To determine whether the conduct is sufficiently severe or pervasive, the Court looks to the totality of circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "Title VII is not designed to purge the workplace of vulgarity." Duncan, 300 F.3d at 934 (internal quotations omitted). "These standards are designed to 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

To support her hostile work environment claim, Leach advances two "theories" based on two groups of allegations: the remarks of non-supervisor Scott Loux in fall 2002, and the

8

comments made by supervisor Laura Pyles in summer 2003.

Prudential Signature argues that evidence of Loux's lewd behavior is time-barred. See 42 U.S.C. § 2000e-5(e)(1) (charge shall be filed within 300 days after alleged unlawful employment practice occurred.). To the contrary, "the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118 (2002). Thus, as to the hostile work environment claim, this Court must look to all the circumstances. See Jenson v. Henderson, 315 F.3d 854, 858-59 (8th Cir. 2002) (citing Morgan, 536 U.S. at 116).

Loux (accompanied by other male employees) made the specific comments about entering Leach's apartment and donning her underwear, about how eating the hot dog resembled oral sex, and about swinging at the Christmas party motel. Additionally, without specifying particular comments, Leach generally alleges that Loux routinely made sexually suggestive remarks. Loux's comments and actions are certainly insensitive, boorish, and decidedly immature. See Duncan, 300 F.3d at 935. The Court concludes, however, that the isolated remarks are the kind of banter and teasing that, while grossly inappropriate, cannot give rise to an actionable federal sexual harassment claim. See id.

As for the supervisory theory, the Court assumes that Pyles's comments constitute harassment based on sex. Remarks from a supervisor about changes to one's body during pregnancy would be annoying—even humiliating—to a reasonable person. Pyles talked repeatedly, sometimes around other persons, about Leach's growing cleavage, and told her to cover her navel with a band-aid. But the immature and insensitive comments fall far short of being abusive. They are simply not severe enough to affect a term, condition, or privilege of

9

employment. See Duncan, 300 F.3d at 935.

An objective observer would not find the totality of harassment in this case abusive or hostile. It does not approach that in Duncan in either severity or pervasiveness. See id. at 931-35. Leach has alleged sporadic incidents of harassment, not a steady barrage of opprobrious offensive comments. See Comstock v. Consumers Markets, Inc., 953 F. Supp. 1096, 1102 (W.D. Mo. 1996). Therefore, the allegations are insufficient to prove hostile work environment sexual harassment, and summary judgment must be granted.

### D. Constructive discharge

An employee is constructively discharged if an employer renders the employee's working conditions so intolerable that the employee is forced to quit. See Henderson v. Simmons Foods, Inc., 217 F.3d 612, 617 (8th Cir. 1996). An employee's dissatisfaction with work assignments does not establish a constructive discharge. See Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 496 (8th Cir. 1996). To be liable, Prudential Signature must have intended to force Leach to quit or at least have reasonably foreseen her resignation as a consequence of the working conditions at Whispering Hills. See Duncan, 300 F.3d at 935.

For the same reasons that the Court concludes that Leach's work environment was not objectively hostile, it follows that her work environment was not so intolerable as to compel a reasonable person to resign. See Alagna, 324 F.3d at 981; Duncan, 300 F.3d at 935-36; Pedroza v. Cintas Corp. No. 2, 397 F.3d 1063, 1071 (8th Cir. 2005); Tatom v. Georgia-Pacific Corp., 228 F.3d 926, 932 (8th Cir. 2000) (loss of supervisory responsibilities, a feeling of being unfairly criticized, dissatisfaction with work assignments, and loss of pay are insufficient to constitute a constructive discharge). Thus, summary judgment must also be granted on the constructive

10

discharge claim.

### E. Intentional infliction of emotional distress

Leach abandons her claim of intentional infliction of emotional distress. Therefore, that count is dismissed, with prejudice.

## IV. Leach's Motions to Strike

Leach moves the Court to strike Prudential Signature's new facts and the affidavits supporting those facts (Docs. 59, 62). Prudential Signature argues, in part, that additional affidavits and an additional statement of facts in support of summary judgment were "necessitated by the 158 paragraphs of plaintiff's statement of additional material facts in dispute." Regardless of which party is to blame, briefing in this straightforward employment case was too long. The paragraphs of "fact"—597 in all—are riddled with hearsay, speculation, and immateriality.

As discussed, Leach has not produced sufficient admissible evidence to create a genuine issue of material fact as to any claim. See Rodgers, 417 F.3d at 850. Therefore, the motions to strike are denied as moot.[2]

---

[2]Leach also moves to strike the reply suggestions in support of summary judgment (with attachments) as untimely filed (Doc. 62). The reply suggestions were timely (though slowly) filed. In any event, Leach could not be prejudiced because the suggestions were in the record as an attachment to Prudential Signature's motion for a page extension.

11

## V. Conclusion

The Court hereby

GRANTS Prudential Signature's motion for summary judgment (Doc. 42) as to counts one through five;

ORDERS that count 6 is dismissed with prejudice; and

DENIES as moot Leach's motions to strike (Docs. 59, 62).

SO ORDERED.

       /s/ Dean Whipple
Dean Whipple
United States District Judge

Date:   January 5, 2006